IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| International Game Technology, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Horace Hugh Andrews, II; and )<br>Drews Distributing, Inc., )<br>)<br>Defendants. )<br>) | Civil Action No. 7:03-1407-HFF-BHH<br><br>**O R D E R** |

This matter is before the court on the plaintiff's motion for protective order and defendant Andrews' motion to disqualify the plaintiff's counsel. The motions were referred to this court pursuant to Title 28, United States Code, Section 636, by order of the Honorable Henry F. Floyd, United States District Judge.

This action arises from an arbitration award granted in favor of Silicon Gaming, Inc. ("Silicon") against Drews Distributing, Inc. ("Drews") in the amount of $1,533,826.39 (pl. m. for protective order, ex. B). The plaintiff in this case, International Game Technology ("IGT") is Silicon's successor-in-interest (pl. m. for protective order, ex. C). The United States District Court for the Northern District of California confirmed the arbitrator's award, and IGT enrolled the judgment in the United State District Court for the District of South Carolina. Subsequently, IGT filed the instant action seeking to enforce the judgment against Drews. The plaintiff's amended complaint also seeks to pierce the corporate veil of Drews to hold defendant Horace Hugh Andrews, II ("Andrews"), the sole shareholder of Drews, personally liable for the judgment. The plaintiff claims that Andrews "abused the corporate form of Drews, treating it as his alter ego, and engaged in fraudulent conveyances and other

wrongful acts as part of [a] scheme to siphon off Drews' assets and reduce it to an empty hulk in order to defeat [IGT's] efforts to enforce its judgment" (pl. m. for protective order 1).

***Plaintiff's Motion for Protective Order***

The plaintiff has moved for a protective order pursuant to Federal Rule of Civil Procedure 26(c). On April 13, 2005, Drews served a notice of Rule 30(b)(5) and (b)(6) deposition upon the plaintiff. The notice requested that IGT designate a witness to testify concerning:

> 1. Game purchase transaction between Silicon Gaming, Inc. and Drews Distributing, Inc. which forms the basis for the arbitration award which is the basis for the judgment alleged in this action;
>
> 2. The capabilities, programming and specifications of the Odyssey gaming machines;
>
> 3. The merger or purchase of Silicon Gaming, Inc. by International Game Technology and the assignment of the arbitration award which is the basis for the judgment alleged in this action.

(Pl. m. protective order, ex. A).

The plaintiff argues:

> The only issues for trial are whether [Andrews] abused Drews' corporate form and engaged in other wrongful acts as part of a plan to render [IGT]'s judgment worthless. . . . Drews is seeking testimony that can only bear relevance to the transaction that underlay the arbitral award that has been confirmed by the judgment [IGT] seeks to enforce herein. Such discovery can have no purpose other than as a part of an improper plan to relitigate issues that have long since been decided either in the arbitration or in defendants' failed efforts to avoid judicial confirmation of that award.

(Pl. m. protective order 2). The plaintiff claims that the first two of the Designated Examination Matters are an attempt to relitigate the original dispute between Silicon and Drews, which concerned the terms of an agreement between Silicon and Drews regarding

2

the purchase by Drews of 200 Odyssey Video Poker Machines, which were produced by Silicon (pl. m. protective order 6). The plaintiff claims the third Designated Examination Matter is an attempt to relitigate a matter that was resolved in a Stipulation and Order in which Drews specifically agreed that IGT was the proper party to enforce the judgment (pl. m. protective order, ex. C).

According to Drews, it has offered the 200 Odyssey machines to IGT in satisfaction of the judgment against it, but IGT has refused to accept the machines in satisfaction of or even in reduction of the judgment. Drews notes that, according to IGT, the machines have no value since the South Carolina Supreme Court effectively made the use of Odyssey machines illegal in South Carolina as of July 1, 2000 (def. resp. m. protective order 2-3). *See Joytime Distributors and Amusement Co., Inc. v. State*, 528 S.E.2d 647 (S.C. 1999). Drews argues in its response to the motion for protective order:

> [T]he primary goal of the enumerated [Designated Examination Matters] and of this deposition as a whole is to ascertain details to assist in valuing the 200 Odyssey machines in the possession of Drews Distribution. This is particularly critical to this case because the 200 Odyssey machines are the only assets with which Drews Distributing could possibly satisfy the judgment against it.

(Def. resp. m. protective order 3). Drews argues that the Designated Examination Matters are relevant to this inquiry as follows: (1) IGT has taken inconsistent positions as to the value of the machines, and the first item seeks to discover how the machines were valued at the time of the agreement between Drews and IGT for the purchase of the machines; (2) the second item is also relevant to ascertaining the present value of the machines in that it could be helpful in revealing what the adaptability of the machines are to today's market; and (3) the third item is designed to determine what it was about Silicon that IGT valued so greatly in paying nearly $50,000,000 to complete the merger between IGT and Silicon (def. resp. m. for protective order 4).

3

This court finds that the testimony sought by the defendant is relevant to the issues presented in the instant action and further finds that good cause does not exist for the issuance of a protective order. Accordingly, the motion for a protective order is denied.

In the alternative, the plaintiff has requested that this court allow it to make the person(s) available for the deposition via telephone, so as to avoid the expense of sending the proper parties from Nevada to South Carolina for the deposition. The defendant did not address this request in its opposition to the motion for protective order. Based upon the foregoing, it is further ordered that the plaintiff is allowed to make the 30(b)(6) deponent(s) available for deposition via telephone.

***Defendant's Motion to Disqualify Plaintiff's Counsel***

Defendant Andrews has moved to disqualify the plaintiff's attorneys. According to Andrews, plaintiff's attorney Wayne Byrd gave counsel to Andrews and a partner, Jim Farish, Jr., for an enterprise known as H and J of South Carolina, Inc. (def. m. to disqualify 1). Andrews claims that he is concerned that "information given to Wayne Byrd could be utilized against Mr. Andrews for either impeachment purposes or attempts to support Plaintiff's action in piercing the corporate veil" (def. m. to disqualify 2).

According to the affidavit of attorney Byrd, in June 1996, Farish, a long-standing client of Byrd, requested that Byrd assist him in the purchase of shares in Young's Food Stores. Billing records indicate that Byrd met with Farish and Andrews on July 1, 1996 to discuss the tender offer, but Byrd has no recollection of this meeting. This was the only time that Andrews ever met with Byrd or any other attorney working for Turner Padget. The file was opened in the name of Lincoln Oil Company, Inc., a corporation owned by Farish, and all bills were sent to Farish. Turner Padget mailed numerous letters to the shareholders of Young's Food Stores and, ultimately, 14 shareholders sold their shares to Andrews and

4

Farish. All acquired shares were issued in the name of Andrews and Farish as tenants in common or in their wives' names as tenants in common. According to Byrd, Andrews never provided any information concerning himself or any of his business interests, including H and J of South Carolina, Inc. (pl. resp. m. to disqualify, ex. A, Wayne Byrd aff.). Andrews testified in his affidavit that "specific disclosures of H and J were made to Wayne Byrd," but no description of the disclosures was given (def. m. to disqualify, ex. A, Andrews aff.). Farish testified in his affidavit that he "feel[s] sure" that he and Andrews disclosed specific financial information (def. m. to disqualify, ex. B, Farish aff.). Neither Andrews nor Farish testified to any specific financial information or confidential information disclosed to Byrd or any other attorney with Turner Padget. After purchasing the shares, Turner Padget assisted Farish and Andrews with other issues concerning the voting of the shares and the control of the board of directors of Young's Food Stores. Turner Padget's representation for the transaction ceased in March 1997 (pl. resp. m. to disqualify, ex. O, Turner Padget invoices). Turner Padget began representing IGT in the instant dispute in September 2002. Byrd testified in his affidavit that this representation in no way relates to the firm's representation of Andrews in 1996 for the Young's Food Store acquisition (Byrd aff. ¶ 10).

The South Carolina Rules of Professional Conduct are applicable to attorneys practicing law in the District Court of South Carolina. Local Civil Rule 83.I.08 DSC, RDE Rule IV(B). Under the South Carolina Rules of Professional Conduct, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client...." SCRPC R. 1.9.

When considering this rule, an attorney must determine whether the representation of the new client "will injuriously affect a former client in any matter in which he formerly represented" the former client. *Madison v. Graffix Fabrix, Inc.*, 404 S.E.2d 37,

5

40 (S.C. Ct. App. 1991). An attorney must also be certain not to use any knowledge or information acquired in the prior representation against the former client. *Id.*

"Substantially related" is not defined in the current version of the South Carolina Rules of Professional Conduct. Besides defining the terms according to common usage, attorneys "should consider, among other things, whether the affected lawyer 'would have or reasonably could have learned confidential information in the first representation that would be of significance in the second.'" *Townsend v. Townsend*, 474 S.E.2d 424, 429 (S.C. 1996) (quoting 1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 1.9:104, at 293 (1996)). A new version of the Rules of Professional Conduct, popularly known as "Ethics 2000," has been approved by the South Carolina Supreme Court and will take effect on October 1, 2005. The comments shed some light on the definition of "substantially related." "Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the second matter." SCRPC, Ethics 2000, R. 1.9, cmt. 3.

This court finds that Turner Padget's current representation of IGT against Andrews does not violate the Rules of Professional Conduct. Furthermore, as noted by the plaintiff, Andrews has had notice of Turner Padget's representation of IGT since at least April 2003, when Byrd's name appeared as the first-listed attorney of record on the complaint in this case.[1] However, he delayed filing the instant motion until May 12, 2005. A motion to disqualify opposing counsel should be made in a timely manner and should not be used to delay or harass the opposing party. *Gross v. SES Americom*, 307 F.Supp.2d 719 (D. Md. 2004). Failure to do so will result in the waiver of the right to raise the disqualification issue.

---

[1] Andrews claims he "realized at his deposition that Wayne Byrd's law firm was suing him" (Andrews aff.). The deposition occurred five months prior to the filing of the instant motion.

6

The factors to be used in determining whether such a motion is timely are as follows: (a) when the person learned of the alleged conflict; (b) whether he was represented by counsel during the delay; (c) why the delay occurred; (d) whether the motion was delayed for tactical reasons; and (d) whether the disqualification would result in prejudice to the nonmoving party. *Id.* at 723. Andrews has offered no explanation for his delay in filing the motion, and the parties have now "substantially completed" discovery and have already held a mediation conference in an effort to resolve the dispute. As argued by the plaintiff, it would be unduly prejudiced if it is forced to retain a new law firm at this stage of the case (pl. resp. m. to disqualify 6). Therefore, the motion to disqualify the plaintiff's counsel is denied.

Wherefore, based upon the foregoing:

(1)    the plaintiff's motion for protective order is denied;

(2)    the plaintiff is allowed to make the 30(b)(6) deponent(s) available for deposition via telephone as set forth above; and

(3)    defendant Andrews' motion to disqualify counsel is denied.

IT IS SO ORDERED.

                s/Bruce H. Hendricks
                United States Magistrate Judge

September 8, 2005

Greenville, South Carolina